IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| FRANK MARTIN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 18-1159-RJD |
| REO STINSON and MELISSA PAPPAS | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

The matter is before the Court on the Motion for Summary Judgment (Doc. 53) filed by Defendant Pappas and the Motion for Summary Judgment (Doc. 56) filed by Defendant Stinson. Plaintiff timely filed responses (Docs. 63, 64). For the following reasons, Defendant Pappas' motion is **GRANTED** and Defendant Stinson's motion is **DENIED**.

### BACKGROUND

Plaintiff Frank Martin, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was incarcerated at Menard Correctional Center ("Menard"). Following threshold review, Plaintiff proceeds on the following claims:

> **Count 1:** Defendants Stinson and Pappas failed to protect Plaintiff from violence at the hands of inmate Gaines, in violation of the Eighth Amendment.

Defendants filed motions for summary judgment arguing there is no evidence they had actual knowledge of an impending harm. Plaintiff contends he informed both Defendants of the harm posed by his cellmate.

**FINDINGS OF FACT**

During all times relevant, Plaintiff was housed at Menard (Plaintiff's Deposition, Doc. 54-1 at 5). Plaintiff was transferred to Menard on January 6, 2016 (Doc. 56-2 at 1). On February 5, 2016, Plaintiff was placed in West 509 with a cellmate, Calvin Gaines (Id., Doc. 54-1 at 5). According to Plaintiff, when he moved into the cell, Gaines told him there were rules for the cell (Doc. 54-1 at 5). Gaines would become angry with Plaintiff if he did not clean the cell the right way (Id.). The two were celled together for approximately two and a half months (Doc. 56-2 at 1).

Plaintiff testified during the time the two were housed together, Gaines' attitude worsened, and he grew angry (Doc. 54-1 at 6). Plaintiff sent a kite to the mental health department expressing confusion with his cell placement (Doc. 54-3 at 99). Melissa Pappas, a mental health professional, responded to Plaintiff's kite and set up a face-to-face meeting on February 18, 2006 (Id.). Plaintiff inquired about how he was placed with his cellmate and expressed frustration and unhappiness with his living situation (Id.). Pappas explained the placement protocol (Id.). She noted Plaintiff suffered from depression and scheduled a follow up within 30 days (Id.). The interaction lasted approximately five minutes (Id.).

On March 14, 2016, Pappas met with Plaintiff a second time to discuss a treatment plan (Doc. 54-3 at 102). Plaintiff reported, "I am coping with my cellie. Well, I am trying to." (Id.). Pappas discussed with Plaintiff coping skills to deal with frustration (Id., 54-4 at 2, 54-1 at 17). The interaction lasted approximately twelve minutes (Doc. 54-3 at 102). Pappas attested that at no time during the February 18, 2016 or March 14, 2016 interactions did Plaintiff indicate he was being threatened or feared for his safety (Doc. 54-4 at 2). Pappas further stated that if an offender

came to her fearing for his safety from his cellmate, it is her regular practice to note specific threats in his records, contact internal affairs, and note that internal affairs has been contacted (Id.). Plaintiff's mental health records from February 18, 2016 and March 14, 2016 contain no documentation regarding threats from his cellmate (Doc. 54-3 at 99-102). Defendant Pappas had no other interaction with Plaintiff prior to the May 25, 2016 assault (Id.).

Plaintiff testified during the two-month period they were housed together, Gaines increasingly threatened him approximately 40-50 times (Doc. 54-1 at 8). Gaines would threaten to "beat my ass," "take me out," and "make my life miserable" (Id. at 7). Plaintiff testified he complained to a number of correctional staff, including Internal Affairs Officer Bridges and Lieutenant Samuel (Id. at 7-8). Plaintiff also testified during one exchange, Gaines punched him in the face (Id. at 8). Plaintiff did not report the incident of being punched to anyone (Id. at 9).

Plaintiff testified he spoke to Defendant Officer Stinson on one occasion in May 2016 about the issues he was having with Gaines (Doc. 54-1 at 11-12). He could not recall exactly when he spoke to Stinson (Id. at 11-13). Plaintiff told Stinson he felt threatened by Gaines and needed to be moved (Id. at 11-12, 14). The conversation took place when Plaintiff was in line coming back from chow and lasted approximately 30-45 seconds (Id.). Plaintiff testified regarding his conversation with Stinson, "I think I generalized what was going on in the cell. I didn't give any specific examples" (Id. at 14). Reo Stinson attested he does not recall every speaking with Plaintiff (Doc. 59).

On May 25, 2016, Plaintiff was assaulted by Calvin Gaines (Doc. 54-1 at 15). Plaintiff had just returned from lunch and was getting ready to go down to the showers when Gaines told him he was not going to take a shower (Id.). Plaintiff replied that he was going to go to the

showers and Gaines threw him into the wall, causing him to lose consciousness (Id.). The correctional officers that were unlocking cells three doors down responded and separated Gaines from Plaintiff (Id.). Plaintiff was taken to the health care unit bleeding and believes he suffered a concussion (Id. at 16).

Plaintiff testified he never filed a grievance regarding his cell placement with Gaines (Doc. 54-1 at 13). According to Plaintiff's Cumulative Counseling Summary, he talked to his correctional counselor on February 22, 2016, March 16, 2016, March 25, 2016, April 6, 2016, and April 8, 2016, and made no complaints regarding his cell placement with Gaines (Id. at 19). Plaintiff testified that he did not tell his counselor about complaints with Gaines when he visited the cell because he did not want to say anything in front of Gaines (Id.). Plaintiff testified he could place handwritten requests to his counselor into a box (Id.). Plaintiff did not put in a request for protective custody while at Menard (Id.).

**LEGAL STANDARD**

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

The Eighth Amendment's prohibition against cruel and unusual punishment requires that prison officials "take reasonable measures to guarantee the safety of inmates." *Santiago v. Walls*, 599 F.3d 749, 758 (7th Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (other citations omitted)). In order to succeed on a claim for failure to protect against a prison official, a plaintiff must show: (1) that he was incarcerated under conditions posing a substantial risk of serious harm and, (2) that prison officials acted with deliberate indifference to that risk. *Id.*

In order to establish the first element, a plaintiff must show not only that he experienced, or was exposed to, a serious harm, but also that there was a substantial risk beforehand that serious harm might actually occur. *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005). The second element, the subjective element, is more difficult for a plaintiff to demonstrate, and requires an inquiry into a defendant prison official's state of mind. *Farmer*, 511 U.S. at 847. A prison official may be held liable only if he knows an inmate faces a substantial risk of serious harm and "disregards that risk by failing to take reasonable measures to abate it." *Id.* Thus, in order for Plaintiff to prevail on his failure to protect claim, he must establish that Defendants had actual knowledge of an impending harm, easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from each Defendant's failure to prevent it. *Santiago*, 599 F.3d at 758. "In cases involving inmate-on-inmate violence, 'a prisoner normally provides actual

knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety'." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996).

ANALYSIS

**Defendant Pappas**

The evidence here, even when viewed in Plaintiff's favor, fails to establish that Defendant Pappas was aware of, and disregarded, a known hazard to Plaintiff's health and safety. The evidence establishes that on his first visit with Pappas, Plaintiff had been housed with Gaines for 13 days and reported frustration and unhappiness with his living situation. The two agree they discussed coping skills he could use to deal with is frustration. There is no evidence Plaintiff reported threats such that Pappas was aware he was in imminent danger. On the second visit, Plaintiff again complained about Gaines, but stated, "I'm coping with my cellie." There is insufficient evidence such that a jury could find Plaintiff's complaints about Gaines on March 14, 2016, were such that Pappas had actual knowledge of an impending harm for which she was required to take steps to prevent. Defendant Pappas is entitled to summary judgment on Plaintiff's failure to protect claim.

**Defendant Stinson**

Plaintiff admits he had only one brief conversation with Defendant Stinson regarding Gaines, however, during the 30-second conversation he stated that he felt threatened by Gaines and asked to be moved. The one conversation in May 2016, although brief, raises genuine issues of material fact as to whether Defendant Stinson had "actual knowledge of impending harm" such that he was required to act to prevent the assault that occurred. Defendant Stinson is not entitled to summary judgment on Plaintiff's failure to protect claim.

## CONCLUSION

Based on the foregoing, the Motion for Summary Judgment filed by Defendant Pappas (Doc. 53) is **GRANTED** and the Motion for Summary Judgment filed by Defendant Stinson (Doc. 56) is **DENIED**. The Clerk shall enter judgment in favor of Defendant Pappas and against Plaintiff at the close of the case. Plaintiff shall proceed on the following claim:

**Count 1:** Defendant Stinson failed to protect Plaintiff from violence at the hands of inmate Gaines in violation of the Eighth Amendment.

**IT IS SO ORDERED.**

**DATED: January 2, 2020**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**